## TOMLINSON ET AL. *v.* MILLER ET AL.

[No. 17,304. Filed December 21, 1944. Rehearing denied January 19, 1945. Transfer denied March 14, 1945.]

470

*E. E. Neel,* of Newport, and *Owen S. Boling,* of Indianapolis, for appellants.

*W. A. Somers,* of Rennselaer, for appellees.

CRUMPACKER, J.—Sometime prior to July 6, 1940, the appellant, William H. Tomlinson, obtained a judgment in the sum of $331.75 in the White Circuit Court against one William Zabel. The said Zabel was a married man at the time said judgment was procured, and his wife, Bertha, was then the owner of 60 acres of farm land in said county and she remained such owner until her death intestate on July 6, 1940. She left surviving, as her sole and only heirs at law, her husband, William Zabel, and her children, the appellees herein, who took the real estate above mentioned under the laws of descent of the State of Indiana. Shortly after his wife's death the said William Zabel conveyed his interest in said real estate to the appellees, and the appellant Tomlinson thereafter caused an execution to be issued on his judgment and placed the same in the hands of the appel-

lant, Verlie Connell, as Sheriff of White County, who thereupon levied such execution on said real estate, as the property of William Zabel, and advertised the same for sale in satisfaction of said judgment. The appellees brought this suit to perpetually enjoin the appellants from enforcing said judgment through the sale of said real estate or any part thereof. There was a general finding for the appellees and by proper decree the appellants were so enjoined.

This appeal questions: (a) The sufficiency of the evidence to sustain the decision of the court; (b) the legality of such decision; and (c) the jurisdiction of the trial court over the subject matter of the litigation.

The appellees sought and obtained relief below on the theory that the Tomlinson judgment is against William Zabel alone and that the real estate he inherited from his wife, Bertha, was not subject to execution because it constituted all the property he owned and was and always had been, since the date of said judgment, worth less than the exemption allowed him as a resident householder by § 2-3501, Burns' 1933, § 558, Baldwin's 1934, as amended by Acts 1937, ch. 296, § 1, p. 1348. See § 2-3501, Burns' 1943 (Supp). The pertinent portion of the above statute reads as follows:

"From and after the taking effect of this act, the following property of any resident householder of the state of Indiana shall not be liable for levy or sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract express or implied:

"(a) Real estate, or estates or rights therein or thereto of the value of not more than seven hundred dollars ($700).

"(b) Tangible personal property to the value of six hundred dollars ($600). . .

"In no event shall the total of all exempted property exclusive of income or profits under the pro-

visions of this act exceed in value the sum of one thousand dollars ($1,000)."

The appellants contend that the protection of this statute is not available to the appellees because the evidence fails to show that William Zabel is a resident householder as that term is defined by the law of Indiana.

We find evidence in the record that the land involved in this litigation is worth $30.00 per acre, that the value of the whole farm is $1,800 and the undivided one-third thereof, which William Zabel inherited from his wife, is worth $600. There is also evidence tending to prove that the value of all other property belonging to Zabel at no time ever exceeded $10.00. After Bertha Zabel died the said William Zabel continued to live on the farm and still lives there with the full consent of the appellees, to whom he pays no rent. He raises a few hogs and chickens and markets the same. He milks two cows and raises garden truck which he sells. The appellee Minnie Zabel, an unmarried daughter now almost blind, lives with him and does what she can toward keeping the house. With the money received from the sale of hogs, chickens, milk and garden produce he supplies the meager wants of himself and daughter.

In *Bipus* v. *Deer* (1886), 106 Ind. 135, 5 N. E. 894, it was held that a widower who has no one necessarily dependent on him for support, but who lives in a house belonging to a married daughter, in which he lived at the time of his wife's death, and on which he pays taxes and keeps up improvements, without paying other rent, and who contributes to the living expenses of the daughter, who acts as his housekeeper, is a householder within the meaning of the exemption law. On the facts this case is different from the one at bar only in that

William Zabel pays no taxes nor does he keep up improvements on the property. The fact, however, that one occupies a house free from rent does not, in and of itself, deprive him of his status as a householder, and we think the evidence above set out is sufficient to support the trial court's decision to the effect that William Zabel is and has been, during all of the time involved in this controversy, a householder within the meaning of the exemption laws of the State, and that the value of the land and all other property owned by him during such period is less than the sum allowed by statute as free from execution.

The appellants insist, however, that even though William Zabel may be a resident householder, his right, as a judgment debtor, to have certain property set off to him free of execution is a personal privilege which must be exercised in the manner provided in § 2-3512, Burns' 1933, § 569, Baldwin's 1934, which we quote as follows:

"Before any person shall be entitled to the benefit of the provisions of the above recited act, he shall make out and deliver to the sheriff or other officer having the writ an inventory of all of his or her real estate, within or without this state, money on hand or on deposit within or without this state, rights, credits and choses in action, and all personal property of every description whatever belonging to him or in which he had any interest at the date of the issuing of the writ, and make and subscribe an affidavit to the same that such inventory contains a full and true account of all such property as required in this act to be set out in the said inventory, had or held by him at the time such writ was issued; and if any such property has been disposed of by him since the issuing of the writ, such affidavit shall show that fact, and how the same has been disposed of, and what disposition he has made of the proceeds; and until such inventory and affidavit shall be furnished to

such officer, he shall not set apart any property to the execution defendant as exempt from execution."

The appellees admit that neither William Zabel nor themselves have made any effort to comply with the terms of this statute but contend that it has no application in the instant case because William Zabel, the judgment debtor, sold the property to them before execution was issued and placed in the hands of the sheriff, and that all the property then owned by William Zabel was of a value less than the amount allowed him as exempt from execution and, therefore, the Tomlinson judgment was not and never had been a lien upon the real estate involved.

As a general principle of law it may be said that the right to exempt property from sale on execution is a privilege, personal to the judgment debtor, created by statute and, when such statute provides a manner in which the privilege shall be exercised, a compliance therewith is mandatory and a failure of the judgment debtor to so comply is a waiver of the privilege. *Moss* v. *Jenkins* (1897), 146 Ind. 589, 45 N. E. 789; *Wagner* v. *Barden* (1895), 13 Ind. App. 571, 41 N. E. 1067; *Kahn* v. *Hayes* (1899), 22 Ind. App. 182, 53 N. E. 430; *H. C. Smith Coal Co.* v. *Finley* (1921), 190 Ind. 481, 131 N. E. 5.

However, in cases involving the rights of a purchaser of real estate, which the vendor could have claimed as exempt from sale on execution, our courts are inclined to be guided by principles of equity rather than by the strict letter of the statute. In the case of *The Citizens State Bank of Noblesville* v. *Harris* (1897), 149 Ind. 208, 211, 48 N. E. 856, it is said:

"Courts give a liberal construction to the law that exempts from sale on execution the property

of a resident householder, as such an act is intended to protect the insolvent debtor and his family so that they may, in the language of our constitution, 'enjoy the necessary comforts of life.' Guided by this principle, this court has not limited the application of our exemption statute to cases only which fall directly within its strict letter, but has applied it to all such as come within the spirit and equity of the law, so as to promote and secure the object intended. Where a judgment is founded on contract, the rule in this State is that the judgment debtor, if he is a resident householder, and his entire estate, real and personal, of every kind and description whatever, within and without the State, does not exceed in value the amount which, under the law, he is authorized to claim as exempt from sale on such judgment, he may, before any such sale occurs, sell or dispose of any or all of his property, and the purchaser or person to whom the property passes, will take it free from the lien of the judgment, or the lien of any execution that may have been issued thereon. As to any real estate so disposed of by such judgment debtor, the person to whom it has been conveyed may maintain an action to quiet his title against the lien of the judgment, provided he commences his suit for that purpose before the real estate is sold under the judgment. This doctrine is fully sustained by the following decisions, some of which expressly affirm it, and others indirectly support it: *Barnard* v. *Brown,* 112 Ind. 53; *Dumbould* v. *Rowley,* 113 Ind. 357; *Ray* v. *Yarnell,* 118 Ind. 112; *King* v. *Easton,* 135 Ind. 353; *Moss* v. *Jenkins,* 146 Ind. 589; *Isgrigg* v. *Pauley,* 148 Ind. 436; *Coppage* v. *Gregg,* 1 Ind. App. 112."

The identical question here presented was considered and decided by this court in *Kirk* v. *Macy* (1912), 53 Ind. App. 17, 101 N. E. 108. There as here the action was to enjoin the sale of lands on execution to satisfy a judgment. There as here the judgment debtor sold the lands involved without having filed the schedule and inventory required by § 2-3512,

Burns' 1933, § 569, Baldwin's 1934, *supra*. The court applied the rule announced in the Harris case above quoted and concluded that a failure by the judgment debtor to file statutory inventories and schedules was not fatal to his grantee's rights to hold the real estate free from judgment liens if the judgment debtor could have done so.

The Supreme Court said in *Moss* v. *Jenkins, supra:*

"The right of the purchaser of real estate, which the vendor could have claimed as exempt from sale on execution, to maintain an action commenced before the execution sale to quiet his title to such real estate as against such lien rests upon equitable principles, and is not declared by the statute. . . .

"The execution debtor may, after he has sold property which was subject to the lien of an execution, include it in his schedule and claim it as exempt. . . .

"There is no hardship to anyone, therefore, in allowing the purchaser of said property to maintain an action to enforce his vendor's right to claim such property as exempt in order to protect his own title thereto. We think this doctrine is sound, and is sustained by the principles of equity."

This rule is again announced in *Luckett* v. *Hammond* (1919), 188 Ind. 484, 124 N. E. 675, in the following language:

"It is well settled that an execution debtor may, after he has sold property which was subject to a lien of an execution, include it in his schedule and claim it as exempt. So, also, upon well-recognized equitable principles may the purchaser of real estate claim it as exempt from execution sale, if his vendor could have done so. And, if need be, such purchaser may maintain a suit commenced before the execution sale to quiet his title to such real estate as against such lien or to enjoin the sale on the ground that, at the time of his purchase, his vendor was not the owner of property in value to exceed $600."

The appellants have called our attention to factual differences between the cases from which we have quoted above and the case at bar. That there are such differences we readily admit, but the point we seek to emphasize is that each of said decisions announces the rule that the right of a purchaser to claim property exempt from sale upon execution, if his vendor could have done so, rests upon principles of equity and fairness and exists notwithstanding the statute the appellants seek to invoke in order to destroy that right.

Lastly, the appellants assert that the trial court was wholly without jurisdiction of the subject matter and its judgment herein is therefore without force and effect and is contrary to law. This contention is predicated upon the theory that §§ 3-1417, 3-1418 Burns' 1933 (Supp.), §§ 558-1, 558-2, Baldwin's 1935 Supp. provide a remedy at law by which a resident householder may quiet his title against any judgment or lien where the real estate involved is exempt from sale on execution, and that it is always a sufficient objection to the granting of an injunction that the party aggrieved has a full and adequate remedy at law. "An assertion of a right to seize land, when made under color of official authority, clouds title, and it has always been a well recognized equity doctrine that injunction will lie to prevent clouds from being cast upon an owner's title. . . . No one, we suppose, doubts that a property owner may quiet his title against an apparent claim, though it be never (ever) so empty, and if he may do this, surely he may by injunction prevent that apparent claim from clouding his title, without delaying until it has assumed that shape." *Bishop* v. *Moorman* (1884), 98 Ind. 1, 3. "Whatever diversity of opinion there may be in other jurisdictions concerning the right

of a land owner to invoke the jurisdiction of a court of chancery, for the purpose of arresting a threatened sale of his land upon an execution issued against the property of a third person, the right to do so must be considered as settled beyond controversy in this State." *Scobey* v. *Walker* (1887), 114 Ind. 254, 255, 15 N. E. 674.

We find no error and judgment is affirmed.

NOTE.—Reported in 58 N. E. (2d) 358.